BAILES, Judge.
Plaintiff instituted this action seeking a judicial determination of the boundary between his property and that of defendant, the contiguous landowner to the west. The two properties are residential lots situated in the Town of New Roads. They are bounded on the north by Main Street and on the south by False River. The question, therefore, is the location of plaintiff’s western boundary between these two points. Defendant filed an exception of prescription contending, inter alia, that the boundary line between the contiguous properties had been established for more than thirty years by visible bounds and that he and his ancestors in title had exercised uninterrupted possession as owners up to these bounds for over thirty years. The exception was sustained and the boundary line was fixed at the visible bounds as shown on a plat of survey by James N. Garrett, C.E., dated November 16, 1967. The plaintiff appealed. The judgment is correct and is affirmed.
The defendant, on June 25, 1934, acquired from Conrad J. Langlois a lot fronting 100 feet on the New Roads-Oscar public highway (now Main Street) extending back between parallel lines to False River and bounded on the east by lands of Emile Chenevert. On the 26th day of November, 1965, the plaintiff acquired from the Chenevert heirs a lot fronting 128 feet on Main Street by a depth extending back between parallel lines to False River and bounded on the west by property formerly of Langlois, now Jewell. Thus plaintiff’s ideal western boundary should be parallel to both his eastern boundary and the west *337 ern boundary of the defendant’s property. However, by his exception, defendant claims to have exercised possession in a southeasterly direction beyond this ideal title boundary.
The trial court found that defendant had, in fact, possessed beyond his title for a period in excess of thirty years to a line evidenced by visible marks. This line of possession begins at Main Street (Point A) and traces the ideal boundary in a southerly direction for approximately 137 feet (Point B) at which point it veers diagonally to the east for approximately 115 feet, ending at False River some 24 feet east of the ideal boundary (Point C).
On this appeal plaintiff-appellant contends that the defendant-appellee failed to bear his burden of proof and that the trial court was in manifest error in finding as he did.
The legal rules governing this matter cannot be disputed. Our Supreme Court in the case of Sessum v. Hemperley, 233 La. 444, 96 So.2d 832, discussed the thirty year prescription of LSA-C.C. Article 852 and concluded:
“Clearly, the now well-established rule, * * *, is that where there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds. The lack or failure of consent on the part of the adjacent owner cannot affect the rights that accrue by operation of law to the possessor under the thirty-year prescriptive plea. * * *” Sessum v. Hemperley, supra, at 843.
Our careful perusal of the record in the present matter convinces us that the possession exercised by the defendant alone, without tacking the possession of his ancestors in title, is sufficient to ' sustain his plea of thirty year prescription.
Mr. Jewell, the defendant, testified that he bought the subject property in 1934, built his home on it and moved into that home in December of the same year. He has lived there continuously since that date. When the property was acquired a fence was in existence which separated his property from the property on the east, at that time owned by Chenevert but subsequently acquired by the plaintiff. The fence was of two types: picket from Main Street to a point approximately half way between the Points A and B hereinbefore referred to and thenafter wire. The wire fence ran out into the water of False River past Point C. Mr. Jewell planted shrubbery along the northern portion of this fence, that is between Points A and B, and after the shrubbery began to grow the picket fence was removed. The wire fence was never removed but finally deteriorated due to age. Defendant further testified that since he moved upon the property he possessed up to that fence line. Beyond his house near Point B he had maintained a bird dog yard until 1948 when it was removed so that he could build a swimming pool. The swimming pool was constructed within 6 to 8 feet of the fence. The back portion of the lot was used to pasture first his horse and then his son’s pony, and thereafter this area was maintained as a portion of his back lawn. This testimony was corroborated by several other witnesses.
Mr. Joseph Langlois, son of the former owner of defendant’s property, and his two sisters, all in their sixties, each testified that a fence had separated their father’s property from that presently owned by plaintiff. The fence had existed for as *338 long as they could remember but at least from 1911, the year their mother’s niece married and moved on the property - now plaintiff’s. That fence was never moved in the process of repair and existed at the time Mr. Jewell bought the property. They also testified that the former picket fence line now marked by the shrubbery planted by defendant when he moved on the property and that the wire fence on the southern portion of the boundary still existed when defendant’s swimming pool was constructed.
Two of defendant’s friends, Mr. Alfred A. Robinson and Mr. Hamilton E. Gray, testified that they became familiar with the property when the defendant moved onto it in 1934. At that time a fence existed between defendant’s property and that of plaintiff and the old line is today marked by shrubbery on the northern end of the line and yucca plants on the southern end of the line. They testified that since defendant bought the property he made use of all the land up to the fence line, first for his horses and later as part of his back lawn.
The fence recalled by these witnesses apparently remained in existence until at least 1948. Mr. S. N. Garrett, Jr., who built defendant’s swimming pool testified that a fence existed at that time and was located along the shrubbery row on the front of the lot and along the line of yucca plants in the back. The existence of such a fence was also confirmed by Mr. Lance Lemoine who was retained by plaintiff approximately one year prior to this suit to fill the back portion of his lot. Mr. Lemoine testified that plaintiff pointed out his western boundary as being located slightly east of the line of yucca plants, south of which, in the water of False River he found the remanents of an old fence consisting of several old posts and wire.
Finally, Mr. James N. Garrett testified. He had prepared a survey based on lines of possession. His line, between Points A and B, was based on an old hedgerow which had, on its southern end, grown over a “very, very old fence,” which from his personal knowledge had existed for more than 30 years. Between Points B and C, he used the line of yucca plants as the line of possession. He testified that he remembered a fence running generally in the same area and confirmed this memory by finding an old fence post along this line at Point C. In addition, he testified that the defendant’s grass was mowed up to this line on the west and that a drainage ditch dug by plaintiff was along this general line on the east.
Considered as a whole this testimony indicates conclusively that a fence existed between the property of the plaintiff and that of defendant for many years, and at least since 1934, and that the fence line is presently indicated by a hedgerow on the front portion of the lot and a line of yucca plants on the back.
In an attempt to overcome this evidence plaintiff called Mr. J. C. Chenevert, son of the former owner of plaintiff’s property. He testified to the existence of a fence between his father’s property and that presently owned by the defendant. However, he placed the southern portion of that fence line west of the point testified to by the other witnesses. His recollection was somewhat vague due to his long absence from New Roads and we feel that it was incorrect. Plaintiff also called Mr. and Mrs. Howard C. Wascom, the son-in-law and daughter of the former owner of plaintiff’s property. Their testimony consisted of identification of photographs taken between 1940 and 1942 which purport to show that no fence existed between the Monceret and Jewell property at that time. The record fails, however, to prove that the pictures were taken at such an angle as to show within their scope the boundary line in question.
Viewing this testimony in light of the rules set out by the Supreme Court we conclude, as did the trial court, that a visible boundary does exist between the properties of plaintiff and defendant and that the defendant has enjoyed actual uninter *339 rupted possession beyond his title to these visible bounds for a period in excess of 30 years. His plea of thirty year prescription under LSA-C.C. Article 852 was therefore well taken.
The cases cited by plaintiff-appellant in support of his position that defendant had not proved his case are inapposite. Though some of the testimony offered by defendant is general and not specific as to the dates when the fence was actually built, when the plaintiff’s case is considered as a whole it was at least definitely proved that the fence existed in 1934 and that its location is today evidenced by visible marks. Moreover, the evidence shows that the fence constituted a boundary and was not erected or maintained merely as a matter of convenience or as temporary bounds subject to later formal ascertainment.
For the foregoing reasons the judgment appealed is affirmed. The appellant is cast for all costs of the appeal.
Affirmed.